**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

PEDRO RODRIGUEZ,

Petitioner,

v.

KATHLEEN ALLISON, Secretary,

Respondent.

Case No. 21-CV-1395 JLS (AHG)

**ORDER: (1) DENYING MOTIONS TO APPOINT COUNSEL; (2) DENYING PETITION FOR WRIT OF HABEAS CORPUS AND DISMISSING CASE WITH PREJUDICE; (3) DENYING REQUEST FOR EVIDENTIARY HEARING; AND (4) DENYING CERTIFICATE OF APPEALABILITY**

(ECF Nos. 1, 45, 46 & 54)

Petitioner Pedro Rodriguez ("Petitioner" or "Rodriguez") is a state prisoner proceeding pro se with a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. *See* ECF No. 1 ("Petition" or "Pet."). Rodriguez challenges his convictions for falsely obtaining unemployment benefits and disobeying a court order in San Diego Superior Court case number SCD340334. *See generally id.* The Court has read and considered the Petition and the documents submitted in support thereof (ECF Nos. 1-1 & 1-2), the Answer and Memorandum of Points and Authorities in Support of the Answer (ECF Nos. 35

("Answer") & 35-1 ("Mem.")), the Traverse and Memorandum of Points and Authorities in Support of the Traverse (ECF No. 42 ("Traverse")), the lodgments and other documents filed in this case (ECF Nos. 36–36-42, 37 & 52–52-34), and the legal arguments presented by both parties.  For the reasons discussed below, the Court **DENIES** the Petition and **DISMISSES WITH PREJUDICE** the case.  The Court also **DENIES** Petitioner's request for an evidentiary hearing ("Evid. Hr'g Req.," ECF No. 45; Pet. at 47–48) and **DENIES** his motions for appointment of counsel ("Counsel Mots.," ECF Nos. 46 & 54).  Finally, the Court **DENIES** a Certificate of Appealability ("COA").

## MOTIONS TO APPOINT COUNSEL

Rodriguez has asked this Court to appoint counsel.  *See* Counsel Mots.  The Sixth Amendment right to counsel does not extend to federal habeas corpus actions by state prisoners.  *McCleskey v. Zant*, 499 U.S. 467, 495 (1991); *Chaney v. Lewis*, 801 F.2d 1191, 1196 (9th Cir. 1986); *Knaubert v. Goldsmith*, 791 F.2d 722, 728 (9th Cir. 1986).  However, financially eligible habeas petitioners seeking relief pursuant to 28 U.S.C. § 2254 may obtain representation whenever the court "determines that the interests of justice so require."  18 U.S.C. § 3006A(a)(2)(B); *Terrovona v. Kincheloe*, 912 F.2d 1176, 1181 (9th Cir. 1990).  The interests of justice require appointment of counsel when the court conducts an evidentiary hearing on the petition.  *Terrovona*, 912 F.2d at 1177; *Knaubert*, 791 F.2d at 728; Rule 8(c), 28 U.S.C. foll. § 2254.  The appointment of counsel is discretionary when no evidentiary hearing is necessary.  *Terrovona*, 912 F.2d at 1177; *Knaubert*, 791 F.2d at 728.

Here, as discussed below, the Court has determined that Rodriguez is not entitled to an evidentiary hearing, and the decision whether to appoint counsel is therefore discretionary.  "In deciding whether to appoint counsel in a habeas proceeding, the district court must evaluate the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims pro se in light of the complexity of the legal issues involved."  *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983) (per curiam).  "The procedures employed by the federal courts are highly protective of a pro se petitioner's

rights [and] [t]he district court is required to construe a pro se petition more liberally than it would construe a petition drafted by counsel." *Knaubert*, 791 F.2d at 729 (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding pro se complaint to less stringent standard) (per curiam)).   The Petition in this case was pleaded sufficiently to warrant this Court's order directing Respondent to file an Answer or other responsive pleading to the Petition. Moreover, as this Court has concluded below in Section III(B), Rodriguez has no likelihood of success on the merits.   Accordingly, the Court finds the interests of justice do not warrant the appointment of counsel in this case and **DENIES** Rodriguez's Counsel Motions.

**THE HABEAS PETITION**

## I.   Factual Background

This Court gives deference to state court findings of fact and presumes them to be correct; Petitioner may rebut the presumption of correctness, but only by clear and convincing evidence.   *See* 28 U.S.C. § 2254(e)(1); *see also Parle v. Fraley*, 506 U.S. 20, 35–36 (1992) (holding findings of historical fact, including inferences properly drawn from those facts, are entitled to statutory presumption of correctness).   The state appellate court recited the facts as follows:

### A.   Offenses Involving Rebecca (Counts 1–2, 6–37)

In February 2014, Rodriguez began a sexual relationship with Rebecca when he was 41 years old and she was 16 years old.   Rebecca's parents learned about the relationship, which resulted in Rodriguez being arrested and prosecuted for committing sexual acts with a minor.

At Rodriguez's arraignment, the trial court orally ordered Rodriguez not to have any contact with Rebecca or her parents, either personally or through any third party, "with the exception of the attorney of record."   The court further ordered Rodriguez not to attempt or actually prevent or dissuade any victim or witness from attending a hearing, testifying, or making a report to a law enforcement agent or any other person.   The minute order from the arraignment states that Rodriguez was served at the arraignment with a written order memorializing the court's

oral ruling.  However, Rodriguez testified that he did not receive the written order itself until two weeks later.

On multiple occasions in the week following his arraignment, Rodriguez called his brother, Juan Rodriguez (Juan), from jail and asked Juan to convey messages to Rebecca. Rodriguez asked Juan to tell Rebecca, inter alia, that Rodriguez "need[ed] her help," she should recant statements that she had made to the police regarding her relationship with Rodriguez, and she should "plead the 5th."  Rodriguez also convinced Juan to mail a phone to Rebecca, which she received.  Several months later, Rodriguez arranged for a second phone to be mailed to Rebecca.

While he was in jail, Rodriguez called the phones he had sent to Rebecca as frequently as three times per day and more than 400 times in total.  In the proceedings below, the prosecution played audio recordings of 32 phone calls between Rodriguez and Rebecca, which were recorded on the jail telephone monitoring system.  Rebecca testified that she recognized all 32 of the recordings as calls between herself and Rodriguez.  These calls form the basis for Counts 6 through 37 of the amended information in this case.

Rebecca testified that over the course of multiple phone and text conversations, Rodriguez asked her to recant her statements to law enforcement regarding her relationship with Rodriguez.  Rebecca testified that Rodriguez also e-mailed her and asked her to sign a document that purported to recant her statements to law enforcement.  Further, Rebecca testified that Rodriguez asked her to lie throughout Case No. SCN333477 [the sexual acts with a minor case], including at the preliminary hearing and trial.

*B.   Offenses Involving Unemployment Insurance Benefits (Counts 3–5)*

While Rodriguez was incarcerated, he also asked Juan to file an unemployment benefits application on his behalf. Rodriguez told Juan to indicate that Rodriguez was unemployed due to a "lack of work."  Juan testified that he completed and

submitted the application, as requested.   After the application was approved, Juan testified that he signed continuing claim forms for Rodriguez, in which he indicated that Rodriguez was looking for work.

Approximately five months after Juan filed for unemployment benefits on Rodriguez's behalf, the Employment Development Department (EDD), which administers California's unemployment insurance program, received a report indicating that Rodriguez was incarcerated and therefore ineligible to receive unemployment benefits.   Thereafter, EDD determined that Rodriguez was not entitled to unemployment benefits because his application contained false statements and he was not available to work.   EDD sent Rodriguez a notice of overpayment and a fraud referral followed.

ECF No. 11-13 (Lodgment No. 5) at 3–4 (footnote omitted).

## II.   Legal Standard

This Petition is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").   *See Lindh v. Murphy*, 521 U.S. 320 (1997).   Under AEDPA, a habeas petition will not be granted with respect to any claim adjudicated on the merits by the state court unless that adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the state court proceeding.   28 U.S.C. § 2254(d); *Early v. Packer*, 537 U.S. 3, 8 (2002).   In deciding a state prisoner's habeas petition, a federal court is not called upon to decide whether it agrees with the state court's determination; rather, the court applies an extraordinarily deferential review, inquiring only whether the state court's decision was objectively unreasonable.   *See Yarborough v. Gentry*, 540 U.S. 1, 4 (2003); *Medina v. Hornung*, 386 F.3d 872, 877 (9th Cir. 2004).

A federal habeas court may grant relief under the "contrary to" clause if the state court applied a rule different from the governing law set forth in Supreme Court cases, or

if it decided a case differently than the Supreme Court on a set of materially indistinguishable facts. *See Bell v. Cone*, 535 U.S. 685, 694 (2002). The court may grant relief under the "unreasonable application" clause if the state court correctly identified the governing legal principle from Supreme Court decisions but unreasonably applied those decisions to the facts of a particular case. *Id*. Additionally, the "unreasonable application" clause requires that the state court decision be more than incorrect or erroneous; to warrant habeas relief, the state court's application of clearly established federal law must be "objectively unreasonable." *See Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). The Court may also grant relief if the state court's decision was based on an unreasonable determination of the facts. 28 U.S.C. § 2254(d)(2).

Where there is no reasoned decision from the state's highest court, the Court "looks through" to the last reasoned state court decision and presumes it provides the basis for the higher court's denial of a claim or claims. *See Ylst v. Nunnemaker*, 501 U.S. 797, 805–06 (1991). If the dispositive state court order does not "furnish a basis for its reasoning," federal habeas courts must conduct an independent review of the record to determine whether the state court's decision is contrary to, or an unreasonable application of, clearly established Supreme Court law. *See Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000), *overruled on other grounds by Andrade*, 538 U.S. at 75–76; *accord Himes v. Thompson*, 336 F.3d 848, 853 (9th Cir. 2003). Clearly established federal law, for purposes of § 2254(d), means "the governing principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Andrade*, 538 U.S. at 72.

## III.  Discussion

Rodriguez raises nine claims in his Petition. *See generally* Pet. Respondent contends eight of those claims are procedurally defaulted and, in the alternative, meritless. *See generally* Mem. Respondent argues Rodriguez is also not entitled to relief on the remaining claim because the state court's resolution of that claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Id*. The Court addresses each of these arguments in turn.

### A.    Procedural Default

Respondent argues that Grounds One, Two, and Four through Nine are procedurally defaulted. Mem. at 32. The Ninth Circuit has held that, because procedural default is an affirmative defense, to establish that a claim is procedurally defaulted, the respondent must first "adequately [plead] the existence of an independent and adequate state procedural ground . . . ." *Bennett v. Mueller*, 322 F.3d 573, 586 (9th Cir. 2003). In order to place the defense at issue, Rodriguez must then "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Id.* The "ultimate burden" of proving procedural default, however, belongs to the state. *Id.* If the state meets its burden under *Bennett*, federal review of the claim is foreclosed unless Rodriguez can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

A state procedural rule is "independent" if the state law basis for the decision is not interwoven with federal law. *Michigan v. Long*, 463 U.S. 1032, 1040–41 (1983); *Harris v. Reed*, 489 U.S. 255, 265 (1989). A ground is "interwoven" with federal law if the state has made application of the procedural bar depend on an antecedent ruling on federal law such as the determination of whether federal constitutional error has been committed. *See Ake v. Oklahoma*, 470 U.S. 68, 75 (1985). "To qualify as an 'adequate' procedural ground, a state rule must be 'firmly established and regularly followed.'" *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Beard v. Kindler*, 558 U.S. 53, 60 (2009)). All cases cited by a state court must be independent and adequate to bar federal review of the claims. *Washington v. Cambra*, 208 F.3d 832, 834 (9th Cir. 2000).

### 1.    Grounds One and Two

Respondent contends Grounds One and Two are procedurally barred as repetitive pursuant to *In re Clark*, 5 Cal. 4th 750 (1993). Mem. at 26–27. Rodriguez raised these grounds in a petition for writ of habeas corpus he filed in his case involving sexual conduct with Rebecca (Case No. SCN333477). *See generally id.*; *see also* ECF No. 36-38

(Lodgment No. 39).  The state appellate court denied that petition, finding that "all [the] claims are procedurally barred and/or fail to state a prima facie case for relief," citing *In re Bower*, 38 Cal. 3d 865, 872 (1985), and noting Rodriguez could have raised the claims on direct appeal but did not.  ECF No. 36-39 (Lodgment No. 40) at 3.  The California Supreme Court denied the petition for writ of habeas corpus Rodriguez filed in case number SCN333477, which raised these same claims, citing *In re Robbins*, 28 Cal. 4th 770, 780 (1998) (untimeliness bar); *In re Clark*, 5 Cal. 4th 750, 767–68 (1993) (bar on successive petitions); *In re Dixon*, 41 Cal. 2d 756, 759 (1953) (bar on claims that could have been but were not raised on direct appeal); and *In re Miller*, 17 Cal. 2d 734, 735 (1941) (bar on repetitive claims).  *See* ECF No. 36-42 (Lodgment No. 43).

Rodriguez raised these grounds again in a petition for writ of habeas corpus he filed in the California Supreme Court in which he challenged his convictions in the present case (Case No. SCN340334); the court summarily denied the petition without citation of authority.  *See* ECF Nos. 36-32–36-37 (Lodgments No. 33–38).  Thus, the last reasoned state court decision addressing these grounds is the California Court of Appeal's opinion denying the habeas corpus petition Rodriguez filed in that court in which he challenged his convictions in this case (Case No. SCN340334).  *Ylst*, 501 U.S. at 805–06.  That court denied the grounds as "repetitive" because they were raised and denied in the case involving sexual conduct with Rebecca (Case No. SCN333477), citing *In re Martin*, 44 Cal. 3d 1, 27 n.3 (1987).  ECF Nos. 36-26–36-31 (Lodgments No. 27–32).

The state appellate court imposed *Clark*'s bar against "repetitive" or "successive" petitions on Grounds One and Two in the case involving sexual conduct with Rebecca (Case No. SCN333477) and not the present case.  Further, the Ninth Circuit has not yet held that California's rule against "repetitive" or successive petitions, as enunciated in *Clark*, is independent and adequate—though, as Respondent notes, district courts in California, including this Court, have concluded that it is.  *See, e.g.*, *Russell v. Borders*, No. 2:17-cv-02487-DMC, 2021 WL 616933, at *8 (E.D. Cal. Feb. 17, 2021); *Taylor v. Jaime*, No. 19-cv-05664-SI, 2021 WL 1553966, at * 8 (N.D. Cal. Apr. 20, 2021); *Cruz v.*

*Montgomery*, No. SACV 20-2193 CAS (MRW), 2021 WL 2828245 (C.D. Cal. May 11, 2021); *Knight v. Diaz*, No. 18-cv-2884-AJB (BGS), 2020 WL 1508377, at *6 (S.D. Cal. March 30, 2020); *Acevedo v. Fisher*, No. 17-cv-2346-GPC (JMA), 2020 WL 4015140, at *4 (S.D. Cal. July 16, 2020); *Luckett v. Matteson*, No. 18-cv-07670-HSG (PR), 2020 WL 6868834, *10 (N.D. Cal. Nov. 23, 2020); *Blackwell v. McDowell*, No. CV 19-9870-PSG (PLA), 2020 WL 8455112, at *9 (C.D. Cal. Dec. 7, 2020).

In addition, in footnote three of *Martin*, which the state court of appeal cited as the procedural bar it was imposing, the California Supreme Court cited *In re Miller*, 17 Cal. 2d 724, 735 (1987), as the basis for its imposition of the procedural bar of repetitiveness. *Martin*, 744 Cal. 3d at 27 n.3. The Ninth Circuit has not determined that either *Miller* or *Martin* are independent and adequate procedural bars. However, several district courts in California have concluded that *Miller* does *not* constitute an independent and adequate state procedural bar. *See Carpenter v. Ayers*, 548 F. Supp. 2d 736, 758 (N.D. Cal. 2008) (finding that *Miller* "merely maintains the status quo of what occurred when the same claims were raised in the first state habeas petition, and does not act as a separate procedural bar to federal habeas review"); *Bryant v. Curry*, No. C 07-1845 JSW PR, 2010 WL 3168385, at *3 (N.D. Cal. Aug. 10, 2010) ("The Ninth Circuit has held that *Miller* means only that the claim is being denied in the second petition on the same grounds as it was denied on in the first one—which is not the same thing as invoking a procedural bar.") (citing *Kim v. Villalobos*, 799 F.2d 1317, 1319 n.1 (9th Cir. 1986)); *Wilkins v. Macomber*, No. 16-cv-00221-SI, 2019 WL 120731, at *6 (N.D. Cal. Jan. 7, 2019) ("*In re Miller* does not act as a procedural bar to federal habeas review."); *Robison v. Barretto*, No. CV 16-08013-VAP (KES), 2018 WL 4907629, at *3 (C.D. Cal. Aug. 2, 2018) ("[A] *Miller* citation [does not] stand[] for a ruling on the merits or a procedural default.").

In light of the foregoing, it is not entirely clear to the Court that Grounds One and Two are procedurally barred under the current circumstances. "California courts need not address procedural default before reaching the merits," *Johnson v. Lee*, 578 U.S. 605, 610 (2016), and in cases where it is easier to resolve the issues by addressing a claim on the

merits, a court may bypass a procedural default in the interests of judicial economy. *Lambrix v. Singletary*, 520 U.S. 518, 524–25 (1997); *Spector v. Diaz*, 115 F. Supp. 3d 1121, 1129 (C.D. Cal. July 11, 2015) (citing *Lambrix*, 520 U.S. at 524–25). Accordingly, the Court will address the merits of Grounds One and Two below in Sections III(B)(1) and (2).

### 2. Grounds Four, Five, Seven, and Eight[1]

Respondent next argues that Grounds Four, Five, Seven, and Eight are procedurally defaulted under California's rule that habeas corpus petitions cannot serve as a substitute for an appeal. *See In re Reno*, 55 Cal. 4th 428, 490 (2012); Mem. at 28–29. Rodriguez raised Grounds Four, Five, Seven, and Eight in a petition for writ of habeas corpus he filed in the California Supreme Court. ECF Nos. 36-32–36-36 (Lodgments No. 33–37). The California Supreme Court summarily denied the claims. ECF No. 36-37 (Lodgment No. 38). Thus, the last reasoned state court decision addressing these claims is the California Court of Appeal's opinion denying Rodriguez's habeas corpus petition, citing *Reno*. *Ylst*, 501 U.S. at 805–06. ECF No. 36-31 (Lodgment No. 32) at 5–6.

As Respondent notes, *Reno* stands for the proposition, originally enunciated in *Dixon*, that claims that could have been raised on appeal may not be brought via habeas corpus. *Reno*, 55 Cal. 4th at 490; *Dixon*, 41 Cal. 2d at 759. The Supreme Court concluded in *Johnson v. Lee*, 578 U.S. 605, 607 (2016), that California's *Dixon* rule is independent and adequate. Accordingly, Respondent has "adequately [pled] the existence of an independent and adequate state procedural ground . . . ." *Bennett*, 322 F.3d at 586.

The burden thus shifts to Rodriguez to "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ." *Id*. Rodriguez has not done so. Federal review of grounds four, five, seven, and eight is thus foreclosed unless Rodriguez

---

[1] Respondent also argues Ground Seven is procedurally defaulted because the state court imposed California's bar on successive petitions as enunciated in *In Re Clark*, 5 Cal. 4th 750, 769 (1993). *See* Mem. at 28–29. Nonetheless, because the Court concludes the claims are procedurally defaulted on other grounds and, in any event, meritless, the Court does not address this argument.

can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

Rodriguez has not established either cause or prejudice. The "cause" prong is satisfied if Rodriguez can demonstrate some "objective factor" that precluded him from raising his claims in state court, such as interference by state officials or constitutionally ineffective counsel. *McClesky v. Zant*, 499 U.S. 467, 493–94 (1991). In his Traverse, Rodriguez states that the claims are not procedurally defaulted because "the appellate court made a mistake per *Pirtle v. Morgan* and any procedural defaults are due to ineffective assistance of appellate counsel . . . ." Traverse at 22. Ineffective assistance of counsel can constitute "cause" for default under certain circumstances. The Supreme Court has held that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez v. Ryan*, 566 U.S. 1, 17 (2012); *Trevino v. Thaler*, 569 U.S. 413, 428 (2013) (applying *Martinez* where a state's procedural system "does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of counsel on direct appeal"). In *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017), however, the Supreme Court concluded that *Martinez* does not apply to claims of ineffective assistance of appellate counsel. Rodriguez has thus not established cause for his default. *Coleman*, 501 U.S. at 750.

Nor has Rodriguez established prejudice. "Prejudice [sufficient to excuse procedurally barred claims] is actual harm resulting from the alleged error." *Vickers v. Stewart*, 144 F.3d 613, 617 (9th Cir. 1998). Rodriguez has not demonstrated he suffered prejudice because, as discussed below in Sections III(B)(4), (5), (7), and (8), Grounds Four, Five, Seven, and Eight are meritless.

Finally, Rodriguez has not shown that failure to review his defaulted claims "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. The Supreme Court has limited the "miscarriage of justice" exception to petitioners who can show that

"a constitutional violation has probably resulted in one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In *Schlup*, the Supreme Court explained that a petitioner's claim of actual innocence can act as a "gateway" to having his otherwise procedurally defaulted claims considered by a federal court. *Schlup*, 513 U.S. at 326–27. The Court has noted the standard is "demanding." *McQuiggin v. Perkins*, 569 U.S. 383, 401 (2013). "The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.'" *Id.* (quoting *Schlup*, 513 U.S. at 316; *Wood v. Hall*, 130 F.3d 373, 379 (9th Cir. 1997) (holding that "actual innocence" means factual innocence, not simply legal insufficiency, and that a mere showing of reasonable doubt is not enough)). As discussed below in Sections III(B)(4), (5), (7), and (8), Rodriguez has not provided the Court with any evidence supporting a conclusion that he is actually innocent of the charges of which he was convicted.

Thus, for the foregoing reasons, the Court concludes that Grounds Four, Five, Seven, and Eight in Rodriguez's Petition are procedurally defaulted. These claims additionally are meritless, as discussed below in Sections III(B)(4), (5), (7), and (8).

### 3. Grounds Six and Nine

Respondent argues Grounds Six and Nine are procedurally defaulted because the state court imposed California's untimeliness bar to those claims. Mem. at 30.[2] Rodriguez raised these claims in a habeas corpus petition he filed in the California Supreme Court. ECF No. 36-32 (Lodgment No. 33) at 77–83. The Supreme Court summarily denied the petition. *See* ECF No. 36-36 (Lodgment No. 37). Under the "look through" doctrine, a summary denial is presumed to be based on the same grounds as the last reasoned state

---

[2] Respondent also argues that Grounds Four, Five, Seven, and Eight are defaulted because the state court imposed California's untimeliness bar enunciated in *In re Robbins*, 18 Cal. 4th 770 (1998). Mem. at 29–30. The Court does not address that argument because it has concluded those claims are procedurally defaulted on other grounds, as addressed above.

court.  *Ylst*, 501 U.S. at 805–06.  The state appellate court concluded these claims were, in part, untimely and thus barred under *In re Clark*, 5 Cal. 4th 750, 769 (1993).  *See* ECF No. 36-31 (Lodgment No. 32) at 6.

The United States Supreme Court held in *Walker v. Martin*, 562 U.S. 307 (2011), that California's untimeliness bar was an independent and adequate state procedural bar. *Id.* at 310, 315–21.   Thus, Respondent has "adequately [pled] the existence of an independent and adequate state procedural ground . . . ."  *Bennett*, 322 F.3d at 586.  The burden accordingly shifts to Rodriguez to "assert[] specific factual allegations that demonstrate the inadequacy of the state procedure . . . ."  *Id*.  Once more, Rodriguez has not done so.  Federal review of Grounds Six and Nine thus is foreclosed unless Rodriguez can "demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

As noted above in Section III(A)(2), the only "cause" offered by Rodriguez for his procedural default is ineffective assistance of appellate counsel.  This, however, is insufficient to establish cause for the default. *McQuiggin*, 569 U.S. at 401; *Davila*, 137 S. Ct. at 2064.  Further, Rodriguez has not established prejudice because, as discussed below in Sections III(B)(6) and (9), the claims are meritless.   Finally, Rodriguez has not established that failure to review his defaulted claims would result in a "miscarriage of justice" because he has not shown he is actually innocent of the charges for which he was convicted.  *Coleman*, 501 U.S. at 750; *Schlup*, 513 U.S. at 316; *Wood*, 130 F.3d 379.  Thus, Grounds Six and Nine are procedurally defaulted.

### B.  *Merits*

Notwithstanding the Court's conclusion that Grounds Four, Five, Six, Seven, Eight, and Nine are procedurally defaulted, they also fail on the merits, as discussed below. Because there is no state court decision to which this Court can defer for its analysis of Grounds One through Two and Four through Nine, the Court must conduct a de novo review of those claims.  *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

### 1.     False Evidence and Actual Innocence (Ground One)

Rodriguez claims that false evidence was introduced in his case involving sexual conduct with Rebecca because the prosecutor "downloaded information from the alleged victim's iCloud account and placed that information on the Petitioner's electronics then misrepresented that information to a jury . . . ." Pet. at 20, 23–34.  Rodriguez claims he is therefore "actually innocent" of the unemployment insurance benefit charges because he was "unlawfully detained" at the time he applied for them.  *Id.*  California Unemployment Insurance Code § 1253.1 states that "[a]n unemployed individual who is in all respects otherwise eligible for unemployment compensation benefits shall not be deemed ineligible for any week in which, for not exceeding two working days, he cannot reasonably be expected to work because . . . [h]e is unlawfully detained."  Cal. Unemp. Ins. Code § 1253.1.

False evidence claims are governed by *Napue v. Illinois*, 360 U.S. 264 (1959).  "A claim under *Napue* will succeed when '(1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) the false testimony was material.'"  *Reis-Campos v. Biter*, 832 F.3d 968, 976 (9th Cir. 2016) (quoting *Jackson v. Brown*, 513 F.3d 1057, 1071–72 (9th Cir. 2008); *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005)).  If there is "any reasonable likelihood that the false testimony could have affected the judgment of the jury," the conviction must be set aside.  *Jackson*, 513 F.3d at 1076 (quoting *Hayes*, 399 F.3d at 985).

Although there is no clearly established Supreme Court law governing claims of actual innocence, as discussed above, the Supreme Court has explained that such a claim can act as a "gateway" to having otherwise untimely or procedurally defaulted claims considered by a federal court.  *McQuiggin*, 529 U.S. at 386; *Schlup*, 513 U.S. at 326–27.  As this Court has explained, Rodriguez must establish that he is actually innocent of the charges against him and that "'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'"  *McQuiggin*, 529 U.S. at 399 (quoting *Schlup*, 513 U.S. at 327).

"To be credible, [a claim of actual innocence] requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.  The reviewing court "must assess the probative force of the newly presented evidence in connection with the evidence of guilt adduced at trial." *Id.* at 332.

In support of his false evidence claim, Rodriguez points to a report by Robert Aguero, an expert Rodriguez hired in case number SCN333477.  Pet. at 43.  The report indicates that data from the victim's phone was found on Rodriguez's phone and in backup files on Rodriguez's computer, but also notes: (i) Aguero had "no indication that there was any tampering by any law enforcement officer with any of these backup files," (ii) that "the computer was out of police custody for some time between when the backups were made and when it was seized so we have no idea who had access to the computer . . . ," and (iii) that "[n]othing here is indicative of any manipulation of the data."   Pet. at 159, 165–66. Aguero was "willing to testify that the iPhone with a device name of 'pedro's iPhone' had the victim's Apple ID and password used to get copies of the victim's data on this phone or had the victim's iTunes backup copied on the computer [Rodriguez] own[ed] and then restored the phone from that data." *Id.* at 168–69.  But Aguero also noted he "[could not] say WHO did this restoring of the victim's data on [the phone named "pedro's iPhone"] or who plugged the phone into [Rodriguez's] computer to create the backup files." *Id*. at 159 (emphasis in original).  Thus, the report does not establish the prosecution introduced false evidence at Rodriguez's trial in the sexual conduct with a minor case (Case No. SCN333477).

By extension, Rodriguez has not established the prosecution presented false evidence at his trial in the current case by falsely representing Rodriguez was lawfully detained in the present case when he applied for unemployment benefits.  Moreover, Rodriguez has not established he is actually innocent of the unemployment benefit fraud charges in the present case.  Aguero's report is not "new reliable evidence – whether it be

exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence"—that would call into question Rodriguez's conviction in case number SCN333477 and thus support his contention that he was unlawfully detained at the time he applied for unemployment insurance benefits. *McQuiggin*, 569 U.S. at 324. Accordingly, Rodriguez is not entitled to relief as to Ground One.

Rodriguez also raises arguments about the state court judge's rulings in his case, claiming they were incorrect interpretations of state law. He claims he "was entitled to the benefits of the unemployment insurance code," and that "Judge Bowman agreed the Petitioner was entitled to notice before criminal charges were filed." Pet. at 23, 25. Rodriguez also complains that he was not given the proper notice of intent to file criminal charges pursuant to California Unemployment Insurance Code § 2113. Pet. at 20. These are challenges to the application of state law in Rodriguez's case that are not cognizable on federal habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 68 (1991) (federal habeas relief is not available for alleged violations of state law); *see also* 28 U.S.C. § 2254(a).

### 2. Ineffective Assistance of Appellate Counsel (Ground Two)

Rodriguez argues in Ground Two that his appellate counsel was ineffective for failing to raise the false evidence and actual innocence claims he raises in this Petition in Ground One. Pet. at 35–37. Ineffective assistance of appellate counsel claims are subject to the standard of review announced in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness. 466 U.S. at 688. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In the context of appellate counsel, a petitioner must show that "counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). A petitioner must also show he was prejudiced by counsel's errors. *Strickland*, 466 U.S. at 694. Prejudice can be demonstrated by showing "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Fretwell v. Lockhart*, 506 U.S. 364, 372 (1993).  Prejudice for a claim of ineffective assistance of appellate counsel requires a petitioner to show "a reasonable probability that, but for his counsel's unreasonable failure . . . , he would have prevailed on his appeal." *Smith*, 528 U.S. at 285–86.

Further, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689.  There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Id*. at 686–87.  The Court need not address both the deficiency prong and the prejudice prong if the defendant fails to make a sufficient showing as to either one. *Id*. at 697.

As discussed above, Rodriguez has not provided any evidence to support his claim that the prosecutor downloaded incriminating photographs onto his phone and computer. Rodriguez's own expert concluded there was "no indication that there was any tampering by any law enforcement officer with any of these backup files," and that "[n]othing here is indicative of any manipulation of the data." Pet. at 165–66.  Because there was no evidence to support Rodriguez's claim that the photographs were placed on his electronic devices by the prosecutor, any argument that he was not guilty of the unemployment benefit fraud claims because he was unlawfully detained would have been futile.  Counsel is not required take futile action or raise meritless claims. *Smith*, 528 U.S. at 285; *see also Rupe v. Wood*, 93 F.3d 1434, 1444–45 (9th Cir. 1996); *Lowry v. Lewis*, 21 F.3d 344, 346 (9th Cir. 1994) (counsel is not obligated to raise frivolous motions, and failure to do so cannot constitute ineffective assistance of counsel).  For the same reason, Rodriguez has also failed to show prejudice. *Strickland*, 466 U.S. 694; *Smith*, 528 U.S. at 285–86.  There is "no reasonable probability that, but for his counsel's unreasonable failure [to raise the claim] . . . , [Petitioner] would have prevailed on his appeal," because the claim is meritless. *Smith*, 528 U.S. at 285–86.  Accordingly, Rodriguez is not entitled to relief as to this claim, either.

/ / /

/ / /

### 3.    *Conducting Voir Dire in Prison Garb (Ground Three)*

In Ground Three, Rodriguez argues his Sixth and Fourteenth Amendment rights to a fair trial and due process were violated when he was forced to select his jury while in prison garb.  Pet. at 37–38.  Although the state appellate court found the trial judge erred by refusing Rodriguez's dress-out request, it also concluded the error was harmless.  ECF No. 36-17 (Lodgment No. 18) at 10–13.   Respondent contends the state court's harmlessness finding was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law.  Mem. at 38–41.

Rodriguez raised this claim in the Petition for Review he filed in the California Supreme Court on direct review.  *See* ECF No. 36-18 (Lodgment No. 19).   The state supreme court summarily denied the petition.   ECF No. 36-19 (Lodgment No. 20). Accordingly, this Court must "look through" to the state appellate court opinion as the basis for its analysis.  *Ylst*, 501 U.S. at 805–06.

That court wrote:

> On appeal, Rodriguez contends that the trial court erred by refusing his timely request to dress out on the first day of voir dire, in violation of his constitutional rights to due process, equal protection, and a fair trial.  Specifically, Rodriguez contends that his dress-out request was timely because he filed a motion and made an oral request to dress out before the jury panel entered the courtroom.   Relying on *People v. Taylor* (1982) 31 Cal.3d 488 (*Taylor*), Rodriguez claims that we must reverse the judgment of conviction in its entirety due to the trial court's error. The People concede that the trial court erred by denying the dress-out request, but claim that the error was harmless.
>
> In *Taylor*, our Supreme Court held "that [a court's] refusal to allow [a] defendant to wear civilian clothing at trial constitute[s] a violation of due process and equal protection" under the federal Constitution.  (*Taylor*, *supra*, 31 Cal.3d at p. 493.)  A defendant may waive his right to be tried in civilian clothing "by a failure to timely object or otherwise bring the matter to the court's attention."  (*Id.* at 495.)  However, an objection is timely so long as it is raised "before the jury enter[s] the courtroom for voir dire."  (*People v. Pena* (1981) 7

Cal.App.4th 1294, 1305; *id*. at p. 1304 [dress-out request made "just before prospective jurors were brought into the courtroom" was timely]; *People v. Hetrick* (1981) 125 Cal.App.3d 849, 854 (*Hetrick*) [dress-out request made one hour before voir dire was timely].)  Considering the foregoing authorities, we accept the People's concession that the court erred by denying Rodriguez's dress-out request.

However, a constitutional violation resulting from an erroneous denial of a dress-out request does not require automatic reversal of a judgment of conviction.  Rather, we apply the harmless error standard set forth in *Chapman*.  *California*, (1967) 386 U.S. 18 (*Chapman*).  *Taylor*, *supra*, 31 Cal.3d at p. 499.)  Under that standard, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  (*Chapman*, at p. 24.)

In this case, we have no trouble concluding that the trial court's error was harmless beyond a reasonable doubt because Rodriguez conceded virtually all of the charges against him.  For example, Rodriguez conceded that the court overseeing Case No. SCN333477 ordered him not to contact Rebecca, yet he arranged for phones to be sent to her and he spoke with her several times. [footnote 4 omitted].  Rodriguez conceded that many of the audio recordings played at trial reflected conversations between himself and Rebecca.  Rodriguez also admitted that he asked Juan to apply for unemployment benefits on his behalf, but was not looking for work and was not able and available to work. Further, the other trial evidence, which included testimony from Rebecca and Juan, corroborated these admissions.

Thus, this case is distinguishable from *Taylor*, on which Rodriguez relies.  In *Taylor*, the defendant and other witnesses presented contradictory testimony regarding the circumstances surrounding a homicide, such that "the jury was squarely confronted with the problem of credibility of witnesses." (*Taylor*, *supra*, 31 Cal.3d at p. 500.)  "In such a situation, where one of the witnesses, the defendant, was clad in jail clothing during his testimony and throughout the trial, [the *Taylor* Court could not] say that the subliminal impact on the jury was so insignificant that the error was harmless beyond a reasonable

doubt." (*Id.* at p. 501; see *Hetrick, supra,* 125 Cal.App.3d at p. 855 [denial of dress-out request not harmless because "witness credibility was crucial in [the] matter."].)  Because Rodriguez conceded virtually all of the charges against him, Rodriguez's credibility simply was not a crucial issue, as it was for the defendant in *Taylor*.

Rodriguez does not dispute that he made these concessions, yet claims that his credibility was still important because he did not admit *all* of the elements necessary to prove counts 3 (making false statements to obtain unemployment benefits), 4 (conspiracy to make false statements to obtain unemployment benefits), and 5 (forgery).   We disagree. Although Rodriguez disputed the falsity of some statements on his unemployment benefits application (e.g., his last employer), he admitted the falsity of other statements ( e.g., that he was looking for work and was able and available to work), which independently supported his convictions for counts 3 and 4. Further, Rodriguez's defense to count 5–specifically, his claim that he could not be convicted of forgery because he authorized Juan to act on his behalf (see *post* at § C)–was a legal defense that did not turn on witness credibility. (*People v. Meredith* (2009) 174 Cal.App.4th 1257, 1263 (*Meredith*) [order denying dress-out request was harmless because the case "turned on the legal meaning of the undisputed evidence"].)   Therefore, Rodriguez's credibility was not an important issue for any of the offenses of which he was convicted.

Our conclusion that the error was harmless is further bolstered by the fact that the trial court repeatedly instructed the jury panel not to consider Rodriguez's jail attire.  The court stated, for example, that Rodriguez's clothes could not "be considered . . . in determining whether or not he's guilty," "[i]t [did not] matter what clothes [he was] wearing," the court "want[ed] [the jury's] verdicts to be the result of consideration of the facts that [it] hear[d] from the witness stand and the law that [it] [gave the jury] rather than what Rodriguez was wearing," and the court did not "want [the jury] to decide the case based on the fact that [Rodriguez was] wearing the clothes that [he was] wearing."  This instruction dispels any prejudice that might have attached due to Rodriguez's attire on the first day of voir dire.

Finally, the prospective jurors who expressed partiality due to Rodriguez's attire were dismissed during voir dire and all of the empaneled jurors swore to render a verdict according only to the evidence and the jury instructions. (*Meredith*, *supra*, 174 Cal.App.4th at p. 1263 ["[T]he jurors' assurances that they would not be biased against defendant because he was in jail, helped ensure that . . . . the trial court's error in causing defendant to go through the trial in jail clothing was harmless beyond a reasonable doubt."].)

For all these reasons, we conclude that the trial court's order denying Rodriguez's dress-out request, though erroneous, was harmless beyond a reasonable doubt.

ECF No. 36-17 (Lodgment No. 18) at 10–13.

When a state court's determination under *Chapman* is challenged on federal habeas corpus review, a federal court must review the state court's harmlessness determination under AEDPA's standard:

When a *Chapman* decision is reviewed under AEDPA, "a federal court may not award habeas relief under § 2254 unless the harmlessness determination itself was unreasonable." *Fry [v. Pliler]*, [551 U.S.] at 119 [citation omitted] (emphasis in original). And a state-court decision is not unreasonable if "'fairminded jurists could disagree' on [its] correctness." *[Harrington v.] Richter*, *supra*, [562 U.S.] at 101 [citations omitted]. [A petitioner] therefore must show that the state court's decision to reject his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *[Richter]*, 562 U.S., at 103 [citation omitted].

*Davis*, 135 S. Ct. at 2199.

Here, the Court finds that the state court's decision was not an unreasonable application of *Chapman*. The state court thoroughly and accurately reviewed the evidence presented at Rodriguez's trial and properly determined that the judge's error in denying his request to dress out was harmless because the evidence supporting Rodriguez's convictions, including his own testimony, was overwhelming. The prosecution introduced

thirty-two recorded jail calls in support of the charges.  Rodriguez identified his own voice on the jail recordings and acknowledged he asked Rebecca to recant the allegations she had made against him.  ECF No. 52-23 (Lodgment No. 23) at 172–96; *see* Cal. Penal Code § 166(a)(4) (disobeying a court order).  Rodriguez also acknowledged he enlisted his brother to send phones to Rebecca so Rodriguez could contact her despite the fact that he knew the judge in his sex offense case had ordered him not to contact her.  ECF No. 52-23 (Lodgment No. 23) at 189–90; *see* Cal. Penal Code § 182(a)(5) (conspiracy to obstruct justice), *id.* § 182(a)(1) (conspiracy to disobey a court order).  Rebecca identified the voices on the jail recordings as hers and Rodriguez's.  ECF No. 52-17 (Lodgment No. 17) at 76, 84–86, 88–96; ECF No. 52-18 (Lodgment No. 18) at 11–42, 1–18; *see* Cal. Penal Code § 166(a)(4) (disobeying a court order).  In addition, Rodriguez admitted he made false statements on his unemployment benefits application and that he involved his brother in his efforts to fraudulently obtain unemployment benefits.  ECF No. 52-23 (Lodgment No. 23) at 189–93; *see* Cal. Penal Code § 182(a)(5) (conspiracy to make false statements); Cal. Unemp. Ins. Code § 2101(a) (making false statements to obtain unemployment insurance benefits).

Moreover, as the state appellate court pointed out, the trial judge admonished the prospective jurors that "the fact that the defendant has been charged or is here in court is not evidence of his guilt," and that they "must not be biased against the defendant just because he's been arrested, charged with a crime, or brought to trial."  ECF No. 52-31 (Lodgment No. 31) at 15–16.  Prospective jurors who told the judge they felt they were biased against Rodriguez because he was dressed in jail clothes were successfully challenged for cause or were removed from the jury pool via a peremptory challenge.  *Id.* at 82–84, 90–91, 96–98, 110, 119–20.  In addition, the judge told the jury that "the clothes [Rodriguez] happens to be wearing . . . can't be considered by you in determining whether or not he's guilty . . . ."  *Id.* at 83.

Rodriguez has not shown the state court's decision "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any

possibility of fairminded disagreement." *Davis*, 135 S. Ct. at 2199. Accordingly, the state court's denial of this claim was neither contrary to, nor an unreasonable application of, clearly established Supreme Court law. *Bell*, 535 U.S. at 694. Rodriguez is not entitled to relief as to this claim. *See* 28 U.S.C. § 2254(d).

### 4.   Failure to Disclose Evidence (Ground Four)

Rodriguez contends the prosecution failed to disclose exculpatory evidence in Ground Four. Pet. at 39–41.

In *Brady v. Maryland*, the Supreme Court held a prosecutor must disclose all material evidence, including impeachment evidence, to the defendant. 373 U.S. 83, 87 (1963). In order to establish a *Brady* violation, Rodriguez must prove three elements: (1) the evidence was suppressed by the prosecution, either willfully or inadvertently; (2) the withheld evidence was either exculpatory or impeachment; and (3) the evidence was material to the defense. *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999); *Benn v. Lambert*, 283 F.3d 1040, 1052–53 (9th Cir. 2002) (citing *United States v. Bagley*, 473 U.S. 667, 676, 678 (1985); *United States v. Agurs*, 427 U.S. 97, 110 (1976)).

"Evidence is deemed prejudicial, or material, only if it undermines confidence in the outcome of the trial." *Benn*, 283 F.3d at 1053 (citing *Bagley*, 473 U.S. at 676; *Agurs*, 427 U.S. at 111–12). "Moreover, we analyze all of the suppressed evidence together, using the same type of analysis that we employ to determine prejudice in ineffective assistance of counsel cases." *Id*. (citing *Bagley*, 473 U.S. at 682; *United States v. Shaffer*, 789 F.2d 682, 688–89 (9th Cir. 1986)). "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995).

As support for this claim, Rodriguez lists a series of motions he made during the course of his case and complains that they were denied. Pet. at 39–41. Specifically, he

/ / /

/ / /

cites to (i) the "*Murgia* motions"[3] he filed, in which he claimed he was the victim of discriminatory prosecution; and (ii) excerpts from the hearing on the motion for a new trial, in which he made various claims regarding altered documents, claims of planted and falsified evidence, complaints about the ancillary services he was given while he represented himself at trial, and allegations that the prosecution withheld evidence. *Id.* at 403–61. But Rodriguez does not identify any specific evidence that was suppressed by the prosecution, much less explain how any supposedly suppressed evidence was exculpatory or how it was material to his defense such that it would have "undermine[d] confidence in the outcome of the trial." *Benn*, 283 F.3d at 1052–53. Instead, Rodriguez simply makes a conclusory argument that he was denied *Brady* material, which is insufficient to warrant habeas corpus relief. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (stating that "[c]onclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"); *Roybal v. Davis*, 148 F. Supp. 3d 958, 1105 (S.D. Cal. 2015) (citing *James*, 24 F.3d 20). Accordingly, Rodriguez has not established the prosecution withheld exculpatory evidence and is therefore not entitled to relief as to this claim.

### 5.    *Discriminatory Prosecution (Ground Five)*

Rodriguez alleges in Ground Five that he was a victim of discriminatory prosecution. Pet. at 42. He claims, as he did in Ground One, that the conduct for which he was convicted was not criminal because he was unlawfully detained at the time he applied for unemployment benefits. *Id.* He also claims he was entitled to notice that a criminal complaint was going to be filed against him pursuant to California Unemployment Insurance Code § 2133. *Id.*

The Supreme Court has noted that, "[i]n our criminal justice system, the Government retains 'broad discretion' as to whom to prosecute." *Wayte v. United States*, 470 U.S. 598, 607 (1985). "'[S]o long as the prosecutor has probable cause to believe that the accused

---

[3] This is a reference to *People v. Murgia*, 15 Cal. 3d 286 (1975), which acknowledges the existence of a discriminatory prosecution defense.

committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *Id.* (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1998)).  However, while "prosecutorial discretion is broad, it is not 'unfettered'" and is "subject to constitutional constraints," such as principles of equal protection.  *Wayte*, 470 U.S. at 608 (citing *United States v. Batchelder*, 442 U.S. 114, 125 (1979) (internal quotation marks and citations omitted)).

A petitioner seeking to establish a discriminatory prosecution claim must "show both that the passive enforcement system had a discriminatory effect and that it was motivated by a discriminatory purpose."  *Wayte*, 470 U.S. at 608.  In other words, a petitioner must show "that others similarly situated have not been prosecuted and that the allegedly discriminatory prosecution of the defendant was based on an impermissible motive." *United States v. Culliton*, 328 F.3d 1074, 1081 (9th Cir. 2003) (citation omitted); *accord Baluyut v. Superior Court*, 12 Cal. 4th 826, 832 (1996).

Rodriguez has provided no evidence to support a conclusion that other similarly situated individuals have not been prosecuted for the charges of which he was convicted, nor that his prosecution was based on an "impermissible motive."  *Culliton*, 328 U.S. at 1081.  His only support for this claim is that his conduct was not criminal because he was being unlawfully detained for having sex with a minor at the time he applied for unemployment benefits.  The Court has already concluded that Rodriguez has failed to establish his conviction for unlawful sexual activity with a minor was based on false evidence; therefore, there is no basis for his claim he was unlawfully detained at the time he applied for unemployment insurance benefits.  Even if true, these facts would not establish either prong of a successful selective prosecution claim.  *Wayte*, 470 U.S. at 608; *Culliton*, 328 U.S. at 1081.

Rodriguez also refers to a comment by the judge who presided over the criminal case against Rodriguez's mother, Gloria Rodriguez, who was charged as an aider and abettor. *See* Pet. at 105.  During a hearing on a dismissal motion her case, Gloria's attorney argued that Gloria was entitled to receive notice of the Employment Development Department's

intent to file criminal charges pursuant to Unemployment Insurance Code § 2113.  Pet. at 108–14.  In his ruling on the issue, the judge noted that Gloria was charged as an aider and abettor, and thus Rodriguez, the principal, was entitled to the § 2113 notice and not Gloria. *Id.* at 112.  Rodriguez claims this establishes his conduct was not criminal, which in turn shows he was selectively prosecuted.  Pet. at 42.

The judge's comment simply explained why he was denying Gloria's motion to dismiss.  It does not establish other people, similarly situated to Rodriguez, have not been prosecuted for the same acts, nor does is show "the allegedly discriminatory prosecution of the defendant was based on an impermissible motive."  *Culliton*, 328 F.3d at 1081 (citation omitted); *Baluyut*, 12 Cal. 4th at 832.  And, to the extent Rodriguez is arguing he was entitled to notice of the Employment Development Department's intent to file criminal charges under California Unemployment Insurance Code § 2113, he is not entitled to relief.  As the Court has previously noted, federal habeas relief is not available for alleged violations of state law.  *Estelle*, 502 U.S. at 67; *see also* 28 U.S.C. § 2254(a).

### 6. *Prosecutorial Misconduct (Ground Six)*

In Ground Six, Rodriguez alleges the prosecutor committed misconduct by "download[ing] information from the alleged victim's iCloud account and plac[ing] that information on the Petitioner's electronics, then misrepresent[ing] that information to a jury," Pet. at 43.  In order to find a prosecutor's actions amount to misconduct, "[i]t is not enough that the prosecutor's remarks [or actions] were undesirable or even universally condemned."  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  Rather, a prosecutor commits misconduct when his or her actions "'so infect . . . the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Id*. (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637 (1974)).  "[T]he appropriate standard of review for such a claim on writ of habeas corpus is 'the narrow one of due process, and not the broad exercise of supervisory power.'"  *Id*. (quoting *Donnelly*, 416 U.S. at 642).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor."  *Smith v. Phillips*, 455 U.S. 209, 219 (1982).

As the Court discussed above in Section III(B)(1), Rodriguez has not presented any evidence to support his claim that the prosecutor downloaded information onto Rodriguez's phone.  Rodriguez's own expert, Robert Aguero, found "no indication that there was any tampering by any law enforcement officer with any of these backup files," that "the computer was out of police custody for some time between when the backups were made and when it was seized so we have no idea who had access to the computer . . . ," and that "[n]othing here is indicative of any manipulation of the data."  Pet. at 165–66.  Rodriguez's prosecutorial misconduct claim is conclusory and speculative.  *James*, 24 F.3d at 26; *Roybal*, 148 F. Supp. 3d at 1105.  Accordingly, Rodriguez is not entitled to relief as to this claim.

### 7.  *Judicial Bias (Ground Seven)*

In Ground Seven, Rodriguez contends the judge in his case was biased.  Pet. at 44–46.  Specifically, he alleges: (1) he was entitled to, but did not receive, notice of the Employment Development Department's intent to seek criminal charges pursuant to California Unemployment Code § 2113; (2) the state court judge incorrectly told prospective jurors that it was Rodriguez's decision to remain in jail clothes during voir dire; (3) he was tried on a standard of less than beyond a reasonable doubt; (4) he was denied ancillary services to which he was entitled, such as dressing out of jail clothes, serving subpoenas, and producing defense witnesses; (5) the judge stated Rodriguez had certain rights but then ruled against him; and (6) the judge's comments were not accurate or fair.  Pet. at 44–45.

"[T]he Due Process Clause clearly requires a 'fair trial in a fair tribunal' before a judge who has no actual bias against the defendant or interest in the outcome of his particular case."  *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal citations omitted); *Smith v. Mahoney*, 611 F.3d 978, 997 (9th Cir. 2010).  "To succeed on a judicial bias claim . . . , the petitioner must 'overcome a presumption of honesty and integrity in those serving as adjudicators.'"  *Larson v. Palmateer*, 515 F.3d 1057, 1067 (9th Cir. 2008) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)).  "In the absence of any evidence of

some extrajudicial source of bias or partiality, neither adverse rulings nor impatient remarks are generally sufficient to overcome the presumption of judicial integrity, even if those remarks are 'critical or disapproving of, or even hostile to, counsel, the parties, or their cases.'"  *Id.* (citing *Liteky v. United States*, 510 U.S. 540, 555 (1994)).  The Ninth Circuit has described three circumstances under which an appearance of bias can violate due process: (1) where a judge has a "has a direct, personal, substantial pecuniary interest in reaching a conclusion against [one of the litigants]"; (2) where "a judge becomes 'embroiled in a running, bitter controversy' with one of the litigants"; or (3) when the judge acts as "part of the accusatory process."  *Crate v. Galaza*, 491 F.3d 1119, 1131 (9th Cir. 2007) (internal quotation marks and citations omitted).

Rodriguez has not "overcome [the] presumption of honesty and integrity" to which the judge in his case is entitled.  *Larson*, 515 F.3d at 1067.  He has not provided any evidence the judge in his case had "a direct, personal, substantial pecuniary interest in reaching a conclusion against [him]"; was "embroiled in a running, bitter controversy" with him; or acted as "part of the accusatory process."  *Crate*, 491 F.3d at 1131.  The allegations Rodriguez has made against the state court judge amount to disagreements Rodriguez has with the judge's rulings.  Further, he has provided no evidence he was tried on a standard of less than beyond a reasonable doubt, he was improperly denied ancillary services, or that the judge's comments were not accurate or fair.  Pet. at 44–45.  He simply makes conclusory statements with regard to those allegations, which is insufficient to warrant habeas relief.  *James*, 24 F.3d at 26; *Roybal*, 148 F. Supp. 3d at 1105.  And, while Rodriguez is correct that the judge erred by denying Rodriguez's dress-out request and conducting voir dire while Rodriguez was dressed in jail clothes, the appellate court properly concluded that the error was harmless beyond a reasonable doubt.  ECF No. 36-17 (Lodgment No. 18) at 10–13.  Rodriguez is not entitled to relief as to this claim.

        8.    *Unconstitutional Vagueness/Non-Criminal Conduct (Ground Eight)*

Although not entirely clear, Rodriguez appears to argue in Ground Eight that Unemployment Insurance Code § 1253.1 is unconstitutionally vague because it could be

interpreted to mean a person is permitted to receive unemployment benefits for up to two days a week even if they are incarcerated.  Pet. at 46–47.  Thus, he contends, he was wrongfully convicted of the unemployment benefit fraud charges.  *Id.*  He also appears to claim the protective order imposed by the state court directing him not to contact Rebecca in his unlawful sexual conduct with a minor case was vague because the order permitted "the attorney of record" to contact Rebecca and Rodriguez was acting as his own attorney. *Id.*

"[T]he Government violates [due process of law] by taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015).   "[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

California Unemployment Insurance Code § 1253.1 states, in pertinent part, as follows:

> An unemployed individual who is in all respects otherwise eligible for unemployment compensation benefits shall not be deemed ineligible for any week in which, for not exceeding two working days, he cannot reasonably be expected to work because:
>
> (a) He is unlawfully detained.
>
> (b) He is lawfully detained or arrested, but the charge against such individual is subsequently dismissed.

Cal. Unemp. Ins. Code § 1253.1.

First, the statute clearly states it is only applicable to persons who are either unlawfully detained or who are lawfully detained but the charges against him are eventually dismissed.  *Id.*  Thus, the statute does not apply to Rodriguez because, as discussed in

Section III(B)(1), Rodriguez was not unlawfully detained in his sexual conduct with a minor case, nor were the charges in that case eventually dismissed.  Second, the statute states a person who is either unlawfully detained or who has the charges for which is being detained dismissed remains eligible for benefits if he was unable to work for no more than two working days in any one week.  Cal. Unemp. Ins. Code § 1253.1.  The statute as written would give an ordinary person in Rodriguez's position fair notice that receiving unemployment benefits while incarcerated and unable to work for more than two working days in a week was prohibited.  *Johnson*, 576 U.S. at 595; *Kolender*, 461 U.S. at 357.

Regarding Rodriguez's claim that the "no contact" order issued by the state court judge was vague, Rodriguez also is not entitled to relief.  When he issued the order in open court, the state court judge told Rodriguez that he had concluded Rodriguez was "an extreme danger to the community"; he was "protecting . . . Rebecca J. [the victim], Geraldine J., and Steven J."; and those individuals were now "protected persons of this court."  ECF No. 52-23 (Lodgment No. 23) at 11.  The judge then told Rodriguez he was to "have absolutely no contact with these individuals.  None.  Not in any way, shape, or form, not personal, electronic or telephonic," nor could he have "contact with them through a third party with the exception of the attorney of record."  *Id.*  The order gave Rodriguez "fair notice of the conduct it punishes."  *Johnson*, 576 U.S. at 595.  Further, the order told Rodriguez he was not to contact the victim using a third party.  The only exception to that admonition was contact through the attorney of record.  Rodriguez was not a third party to the action and thus that exception did not apply to Rodriguez.  And it was not reasonable for Rodriguez to interpret the order to permit him to contact Rebecca because he was acting as his own attorney, because such an exception would vitiate the entire purpose of the protective order.

Taken as a whole, the protective order would have given an ordinary person in Rodriguez's position fair notice that contacting the victim was prohibited by the judge's order, even though he was representing himself.  *Johnson*, 576 U.S. at 595; *Kolender*, 461 U.S. at 357.  Accordingly, Rodriguez is not entitled to relief as to this claim.

### 9.    *Unfair Legal Process/Evidentiary Hearing (Ground Nine)*

In Ground Nine, Rodriguez claims he "has been denied a legal orderly procedure . . . [and] substantive and procedural due process." Pet. at 47. He does not explain what this means, nor does he make any legal or factual arguments in support of the claims. Thus, he is not entitled to relief as to this claim. *James*, 24 F.3d at 26; *Roybal*, 148 F. Supp. 3d at 1105.

## EVIDENTIARY HEARING

Rodriguez also asks for an evidentiary hearing in this Court to resolve his claims. Pet. at 47–48. Evidentiary hearings in § 2254 cases are governed by AEDPA, which "substantially restricts the district court's discretion to grant an evidentiary hearing." *Baja v. Ducharme*, 187 F.3d 1075, 1077 (9th Cir. 1999); *Clark v. Chappell*, 936 F.3d 944, 967–68 (9th Cir. 2019). The relevant standard is as follows:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that --
>
> (A) the claim relies on --
>
>> (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>>
>> (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C.A. § 2254(e)(2). The standard for granting such a request is clear:

> To determine whether a petitioner is entitled to an evidentiary hearing under 28 U.S.C. § 2254(e)(2), a court must first determine whether a factual basis exists in the record to support

the petitioner's claim. *Insyxiengmay v. Morgan*, 403 F.3d 657, 669–70 (9th Cir. 2005) (quoting *Baja v. Ducharme*, 187 F.3d 1075, 1078 (9th Cir. 1999)).  If the record contains a sufficient factual basis that "refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Landrigan*, 550 U.S. at 474, 127 S.Ct. 1933; *see Pinholster*, 563 U.S. at 171, 131 U.S. 1388 ("[A] federal habeas court is 'not required to hold an evidentiary hearing' when the state-court record 'precludes habeas relief' under § 2254(d)'s limitations.") (citation omitted).  If the factual basis for the claim is undeveloped or absent, the next inquiry is whether petitioner "failed to develop" these facts in state court proceedings. *Insyxiengmay*, 403 F.3d at 669–70.  Only when a petitioner demonstrates that he did not fail to develop the factual basis for his claim in state court may a federal court proceed to consider whether a hearing is appropriate or required under the framework set forth in *Townsend v. Sain*, *id.*

*Cook v. Kernan*, 948 F.3d 952, 970–71 (9th Cir. 2020).

Here, as discussed in Section III(B) above, there is "a sufficient factual basis [in the record] that 'refutes the applicant's factual allegations.'"  *Cook*, 948 F.3d at 971 (citations omitted).  Further, in *Pinholster*, the Supreme Court held that where habeas claims have been decided on their merits in state court, a federal court's review must be confined to the record that was before the state court.  563 U.S. at 181–82.  Rodriguez can only proceed to develop additional evidence in federal court if either § 2254(d)(1) or § 2254(d)(2) is first satisfied.  *See Sully v. Ayers*, 725 F.3d 1057, 1075 (9th Cir. 2013) (stating that "an evidentiary hearing is pointless once the district court has determined that § 2254(d) precludes habeas relief[]" (citing *Pinholster*, 563 U.S. at 203 n.20)).  For all the reasons discussed above, Rodriguez is not entitled to federal habeas relief pursuant to either § 2254(d)(1) or § 2254(d)(2).  Accordingly, Rodriguez is not entitled to an evidentiary hearing.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** the Petition (ECF No. 1) and **DISMISSES WITH PREJUDICE** this action.  The Court further **DENIES** Rodriguez's

motions to appoint counsel (ECF Nos. 46 & 54) and his request for an evidentiary hearing (Pet. at 47–48; ECF No. 45).

Rule 11 of the Rules Following 28 U.S.C. § 2254 requires the Court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A COA will issue when the petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253; *Pham v. Terhune*, 400 F.3d 740, 742 (9th Cir. 2005). A "substantial showing" requires a demonstration that "'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Beaty v. Stewart*, 303 F.3d 975, 984 (9th Cir. 2002) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Here, the Court concludes Rodriguez has not made the required showing, and therefore **DENIES** a certificate of appealability.

As this concludes the litigation in this matter, the Clerk of the Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: October 7, 2022

Hon. Janis L. Sammartino
United States District Judge